IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RICHARD OTTO HANSEN,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>THE CITY OF SUPERIOR,<br>NEBRASKA, et al.,<br><br>　　　　　　Defendants. | 8:20CV63<br><br><br>**MEMORANDUM<br>AND ORDER** |

　　　　This matter is before the court for an initial review of Plaintiff's pro se, in forma pauperis Complaint (Filing No. 1) to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2).

## I. SUMMARY OF COMPLAINT

　　　　Plaintiff, a resident of Superior, Nebraska, filed this action on February 11, 2020, against the City of Superior, its Mayor, six members of the City Council, the City Clerk, the City's Nuisance Abatement Officer, the City's Director of Planning and Zoning, and an indeterminate number of Jane and John Does, who are generally described as officers, agents, servants, and employees of the City, or persons who are in active concert or participation with them. Plaintiff's Complaint contains six numbered claims, which may be briefly summarized as follows:

　　　　1.　　Plaintiff alleges that on February 7, 2013, the City Clerk notified him that a citizen complaint regarding his real property was on the agenda for the City Council meeting on February 11, 2013. Plaintiff claims the notice was untimely and otherwise violated his right to procedural due process under the Fifth and Fourteenth Amendments.

　　　　2.　　Plaintiff alleges that the City Council members voted on February 11, 2013, to institute nuisance abatement proceedings against his property. Plaintiff

claims this action violated his right to procedural due process and also interfered with his right to free speech under the First Amendment. In addition, Plaintiff claims the action was illegal and inequitable under Nebraska law. He alleges that Nebraska statutes do not permit cities to abate nuisances on their own, but instead must file suit in county court. Plaintiff also alleges that the City's Zoning Officer had decided not to institute nuisance abatement proceedings against Plaintiff's property, and he claims the City Council's decision "is in violation of the principle of res judicata."

3. Plaintiff alleges that the Mayor violated his constitutional rights under the First, Fifth, and Fourteenth Amendments by not overriding the City Council's action on February 11, 2013.

4. Plaintiff alleges that on February 19, 2013, the City Clerk violated his rights to equal protection and due process by ordering that items stored outside on the real property be removed or stored inside a building by March 20, 2013.

5. Plaintiff disputes that the City's nuisance abatement ordinance requires personal property to be stored inside, and alleges his property is zoned for outside storage. Plaintiff also alleges that the City's decision was arbitrary and capricious because it was known that Plaintiff did not have the financial resources to take corrective action by March 20, 2013.

6. Plaintiff alleges that on February 10 and 11, 2016, the City's Nuisance Abatement Officer, the City's Director of Planning and Zoning, and the Jane and John Doe defendants seized the "alleged external nuisance property." Plaintiff claims this action violated his right to procedural due process and also constituted an unreasonable search and seizure in violation of the Fourth Amendment.

Plaintiff requests the court to issue "an appropriate declaratory judgment," to enjoin Defendants "from enforcing their ordinances through their incompetent City Council meetings acting as a municipal court," and to award "an appropriate amount of damages."

## II. STANDARDS ON INITIAL REVIEW

The court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e). The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). Pro se plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

## III. DISCUSSION

The statute of limitations for 42 U.S.C. § 1983 actions is governed by the limitations period for personal injury cases in the state in which the cause of action arose.[1] *Wallace v. Kato*, 549 U. S. 384, 387 (2007). In Nebraska, § 1983 actions are limited by a four-year statute of limitations. See *Montin v. Estate of Johnson*, 636 F.3d 409, 412-13 (8th Cir. 2011); Neb. Rev. Stat. § 25-207. Although state law

---

[1] Although the statute of limitations is an affirmative defense, a district court may properly dismiss an in forma pauperis complaint before service when it is apparent from the face of the complaint that the statute of limitations has run. *Myers v. Vogal*, 960 F.2d 750, 751 (8th Cir.1992).

3

establishes the statute of limitations for § 1983 actions, federal law controls on the issue of when the statute of limitations begins to run. *Wallace*, 549 U.S. at 388; *Montin*, 636 F.3d at 413. The standard rule is that accrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief. *Wallace*, 549 U.S. at 388.

While the last action of which Plaintiff complains—the seizure of his personal property on February 11, 2016—allegedly occurred exactly four years before he filed this lawsuit, his claims accrued much earlier than that. The situation in this case is comparable to that presented in *Humphrey v. Eureka Gardens Pub. Facility Bd.*, 891 F.3d 1079 (8th Cir. 2018), in which African-American homeowners brought a § 1983 action against a public facility board and other defendants, alleging the decision to install grinder sewer systems instead of less-expensive gravity sewer systems in their homes violated their rights to procedural due process, substantive due process, and equal protection. The United States Court of Appeals for the Eighth Circuit affirmed the district court's dismissal of the action as time-barred, and held that the applicable three-year statute of limitations (for personal-injury actions under Missouri law) began to run when the homeowners were notified of the board's decision, rather than when they incurred additional costs with the installation of the systems. The Court of Appeals explained:

> Our resolution of this dispute is guided by *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), and *Chardon v. Fernandez*, 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981) (per curiam). In *Ricks*, a college professor filed a Title VII complaint alleging he was denied tenure based on his national origin. 449 U.S. at 254, 101 S.Ct. 498. The college notified the professor that the tenure committee had voted to deny him tenure, but did not terminate his employment until a year later. *Id.* at 252-53, 101 S.Ct. 498. The Supreme Court held that the professor's complaint was time-barred under Title VII's statute of limitations, as the professor's claim had accrued once he was notified of the allegedly discriminatory decision to deny him tenure, not when he was actually terminated. *Id.* at 257-58, 101 S.Ct. 498. According to the Court, "the only alleged discrimination occurred—and the filing limitations period therefore commenced—at the time the tenure decision was made and

4

> communicated to [the professor]. That is so even though one of the *effects* of the denial of tenure—the eventual loss of a teaching position—did not occur until later." *Id.* at 258, 101 S.Ct. 498 (footnote omitted). The professor's termination was not a "continuing violation" of Title VII, but was instead "a delayed, but inevitable, consequence of the denial of tenure." *Id.* at 257-58, 101 S.Ct. 498. In *Chardon*, the Court extended the reasoning of *Ricks* to determine the accrual date for a § 1983 claim of discriminatory termination. 454 U.S. at 7-8, 102 S.Ct. 28. More specifically, the Court held that the decision to terminate was the allegedly discriminatory act, and that the employee's claims accrued when he was notified of that decision, even though he was not actually terminated until a later date. *Id.* at 8, 102 S.Ct. 28.
>
> Applying the same principles here, the Humphreys' claims accrued in October 2011, when they were notified of the allegedly discriminatory decision to install the grinder systems instead of gravity systems at their residences. The installation of the pumps and the Humphreys' continuing responsibility for the additional expenses they entail, like the professor's ultimate termination in *Ricks*, are delayed, but inevitable, consequences of that decision.
>
> According to the Humphreys, their claims did not accrue in October 2011, because they lacked standing to bring their claims at that time. We disagree. When the Humphreys learned of the allegedly discriminatory decision in October 2011, they could have sought declaratory or injunctive relief, and later added demands for compensatory damages once they incurred actual financial harm. *See Chardon*, 454 U.S. at 8, 102 S.Ct. 28; *id.* at 9, 102 S.Ct. 28 (Brennan, J., dissenting) ("The thrust of the Court's decision is to require a potential civil rights plaintiff to measure the time for filing his claim from the moment some form of injunctive relief first becomes available.").

*Id.* at 1081.

So, too, in this case, the seizure of Plaintiff's personal property was a delayed, but inevitable, consequence of his failure to comply with the City Council's order that he remove or store the items inside a building. The February 19, 2013 letter from the City Clerk advised Plaintiff that to avoid any further official action, he needed

5

to clear the real property within one month's time. (Filing No. 1-1, p. 5.) According to a letter from the City's Director of Planning and Zoning, dated February 26, 2016, Plaintiff's property was declared a nuisance on May 27, 2014, and the City Council voted to abate the nuisance on June 23, 2014, but the abatement was not carried out until February 10-11, 2016. (Filing No. 1-1, p. 7.)

In this regard, the court takes judicial notice that Plaintiff filed two earlier actions in this court challenging the constitutionality of the City's decisions.[2] In the first case, which was filed on May 8, 2013, Plaintiff attached a copy of the City Clerk's February 19, 2013 letter to his complaint and sought to obtain an injunction against the enforcement of the City's nuisance abatement ordinance. (See Case No. 4:13CV3098, Filing No. 1.) This court abstained from exercising jurisdiction under the doctrine of *Younger v. Harris*, 401 U.S. 37 (1971), and dismissed the case without prejudice. *See Hansen v. City of Superior*, No. 4:13CV3098, 2013 WL 4500694 (D. Neb. Aug. 21, 2013). In the second case, which was filed on June 27, 2014, Plaintiff attached exhibits to his complaint which show he was notified that the City Council had declared his property a nuisance on May 27, 2014, and that the City would abate the nuisance unless the property was cleared by June 22, 2014. The notice also advised Plaintiff of his right to request a hearing. (See Case No. 4:14CV3137, Filing No. 1.) This court again abstained from exercising jurisdiction over Plaintiff's claim for injunctive relief, but on its own motion granted Plaintiff leave to file an amended complaint to state an actionable § 1983 claim for monetary relief. *See Hansen v. City of Superior*, No. 4:14CV3137, 2014 WL 4659397 (D. Neb. Sept. 17, 2014). The case was dismissed without prejudice on December 3, 2014, after Plaintiff failed to file an amended complaint. (See Case No. 4:14CV3137, Filing No. 9.)

Plaintiff thus appears to have had a "complete and present cause of action" for any procedural due process violation no later than June 23, 2014, which means he is barred by the applicable four-year statute of limitations from pursuing such a claim

---

[2] The court can sua sponte take judicial notice of its own records and files, and facts which are part of its public records. *United States v. Jackson*, 640 F.2d 614, 617 (8th Cir. 1981). Judicial notice is particularly applicable to the court's own records of prior litigation closely related to the case before it. *Id.*

6

for monetary damages and declaratory relief.³ Moreover, no due process violation is reasonably inferable from Plaintiff's pleadings.

In general, procedural due process requires that a hearing before an impartial decision maker be provided at a meaningful time, and in a meaningful manner, prior to a governmental decision which deprives individuals of a liberty or property interest. *Mathews v. Eldridge,* 424 U.S. 319, 332-33 (1976). The Eighth Circuit has held that "where a property owner is given written notice to abate a hazard on his or her property and has been given an opportunity to appear before the proper municipal body considering condemnation of the property, no due process violation occurs when the municipality abates the nuisance pursuant to the condemnation notice." *Samuels v. Meriwether*, 94 F.3d 1163, 1166-67 (8th Cir. 1996); *see Hagen v. Traill County,* 708 F.2d 347, 348 (8th Cir. 1983) (in nuisance abatement case, county and city officials provided adequate procedural protection to plaintiff prior to destruction of his property when officials gave plaintiff oral and written notice of the hazard, plaintiff attended meetings to discuss the issue, and plaintiff failed to take any action to abate the nuisance); *Hedrick v. Pfeiffer*, 10 F. Supp. 2d 1106, 1111 (D. Neb. 1998) (no procedural due process violation where property owner received notice and attended city council meeting at which he was given an opportunity to show cause why the condition of his property was not a nuisance, and later received notice of the city resolution declaring property a nuisance and setting deadlines for abatement of that nuisance), *aff'd*, 175 F.3d 1024 (8th Cir. 1999).

Plaintiff's Complaint does not contain sufficient facts to establish a procedural due process violation. Its conclusory allegations that various procedural due process protections were absent do not satisfy federal pleading requirements. *See* Fed. R. Civ P. 8(a)(2) (a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief"). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*,

---

³ "[A]n action for declaratory relief will be barred to the same extent the applicable statute of limitations bars the concurrent legal remedy." *Algrant v. Evergreen Valley Nurseries Ltd. P'ship*, 126 F.3d 178, 181 (3d Cir. 1997) (citing cases). Plaintiff's request for injunctive relief is limited to his claim that the City does not have independent authority under Nebraska law to abate nuisances.

556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557)

Plaintiff's Complaint also fails to state a viable Fourth Amendment claim. "[I]in determining whether a government seizure violates the Fourth Amendment, the seizure must be examined for its overall reasonableness." *Samuels*, 94 F.3d at 1167 (citing *Soldal v. Cook County*, 506 U.S. 56, 71 (1992)). The Eighth Circuit stated in *Samuels* that "an abatement carried out in accordance with procedural due process is reasonable in the absence of any factors that outweigh governmental interests." *Id.* at 1168. Finding that "the City acted pursuant to a noticed hearing and a resolution effectuating municipal ordinances," and that the plaintiffs "failed to raise any factual issues that advance a valid claim of unreasonable behavior on the part of the City or its agents," the Court of Appeals held that "no violation of the Fourth Amendment occurred." *Id.*; *see also Hedrick*, 10 F. Supp. 2d at 1112 (because city personnel acted pursuant to a noticed hearing and city council resolution, and plaintiff failed to make any showing of unreasonable behavior, there was no Fourth Amendment violation when property was seized). Thus, even if Plaintiff's Fourth Amendment claim is not time-barred with respect to property seized on February 11, 2016, there is no factual basis for the claim.

Plaintiff's final § 1983 claim is that the City Council members violated his First Amendment rights because the decision at the meeting on February 11, 2013, to institute nuisance abatement proceedings, allegedly "was made after Plaintiff … challenged other irrelevant allegations made by defendant Fox in said meeting!" (Filing No 1, p. 10.) "Generally, the statute of limitations clock begins to run on First Amendment retaliation claims immediately after the retaliatory act occurred." *Rassier v. Sanner*, No. CV 17-938 (DWF/LIB), 2020 WL 1082492, at *6 (D. Minn. Mar. 6, 2020) (quoting *Geka v. Vasiliades*, 814 F.3d 890, 894 (7th Cir. 2016)). Because Plaintiff evidently was aware of the alleged retaliatory act when he attended the City Council meeting on February 11, 2013, this claim, like his procedural due process claim, is barred by the four-year statute of limitations. *See, e.g., Ashokkumar v. Elbaum*, 932 F. Supp. 2d 99, 1015-16 (D. Neb. 2013) (doctoral student's § 1983 due process and First Amendment retaliation claims against multiple professors,

8

who refused to serve as her academic advisors and allegedly pressured other professors to do the same, accrued, for limitations purposes, on the dates that student became aware that those professors refused to serve as her advisors or pressured others not to serve).

Because Plaintiff's Complaint fails to state a claim upon which relief may be granted under 42 U.S.C. § 1983, the court need not discuss whether a plausible claim for relief is stated under Nebraska law. Without a viable federal question to decide, the court will not exercise its supplemental jurisdiction in this case. *See* 28 U.S.C. § 1367 (c)(3) (providing that when a district court has disposed of all federal claims that conferred original jurisdiction under 28 U.S.C. § 1331, it may decline to exercise supplemental jurisdiction over remaining state law claims). Usually, the dismissal of the federal claims "will point toward declining to exercise jurisdiction over the remaining state-law claims," *Wilson v. Miller*, 821 F.3d 963, 971 (8th Cir. 2016) (quotation omitted), and the court finds no reason to make an exception here.[4]

Although Plaintiff's federal constitutional claims are now subject to dismissal under 28 U.S.C. § 1915(e)(2), the court on its own motion will give Plaintiff 30 days to file an Amended Complaint which states a claim upon which relief may be granted under 42 U.S.C. § 1983. If an Amended Complaint is filed within 30 days, the court will conduct another initial review. If an Amended Complaint is not filed within 30 days, the action may be dismissed without further notice.

## IV. CONCLUSION

Plaintiff's Complaint fails to state a claim upon which relief may be granted under 42 U.S.C. § 1983, and the court declines to exercise supplemental jurisdiction over any state-law claim in the absence of a viable § 1983 claim.

---

[4] In deciding whether to exercise supplemental jurisdiction, a court considers "factors such as judicial economy, convenience, fairness and comity." *Glorvigen v. Cirrus Design Corp.*, 581 F.3d 737, 749 (8th Cir. 2009) (quoting *Quinn v. Ocwen Fed. Bank FSB*, 470 F.3d 1240, 1249 (8th Cir. 2006)).

IT IS THEREFORE ORDERED:

1. On the court's own motion, Plaintiff shall have 30 days in which to file an Amended Complaint. Failure to file an Amended Complaint within 30 days will result in the court dismissing the case without prejudice, and without further notice to Plaintiff.

2. If Plaintiff files an Amended Complaint, he shall restate the allegations of the Complaint (Filing No. 1) and any new allegations. Failure to consolidate all claims into one document may result in the abandonment of claims. Plaintiff is warned that an Amended Complaint will supersede, not supplement, his prior pleadings. However, Plaintiff does not need to refile any exhibits that are attached to the original Complaint.

3. The court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. § 1915(e) in the event he files an Amended Complaint.

4. The clerk of the court is directed to set the following pro se case management deadline: **September 21, 2020**, check for amended complaint.

Dated this 21st day of August, 2020.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge